Gilmore v. Fries.

*Affirmed in part and reversed in part.*

v.

EDMUND L. FRIES.

*Trespass—Action of—Distress Warrant—Unlawful Levy of—Eviction—Evidence—Instructions.*

1. If a distraint of goods for rent be legal in its inception, the failure of the landlord to begin legal proceedings under the statute, and the return of the goods to the tenant, who accepts the same, do not render the distraint unlawful *ab initio*.

2. In the case presented, this court holds that an instruction leaving for the determination of the jury a question which was settled by written leases introduced in evidence was erroneous, the natural effect thereof being to mislead the jury as to the measure of damages.

3. This court also holds that evidence as to damages remotely caused by the distress proceeding, but for which there was another proximate cause, was improperly admitted in the case at bar.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Will County; the Hon.
CHARLES BLANCHARD, Judge, presiding.

Mr. E. MEERS, for appellants.

Where the lease contains a license to the landlord upon
default in any of its covenants to enter into possession of the
premises, with or without process of law, and expel or remove
the tenant, etc., using no unnecessary force for that purpose,
trespass will not lie.   Ambrose v. Root, 11 Ill. 497; Page v.
DePuy, 40 Ill. 506; Chadwick v. Parker, 44 Ill. 326; Fabri v.
Bryan, 80 Ill. 182; Fort Dearborn Lodge v. Klem, 115 Ill.
177.

Damages that may be recovered for an unlawful entry must
be such as result from the natural consequences of the act.
Olmstead v. Burke, 25 Ill. 74; Chapman v. Kirby, 49 Ill. 211;
Smith v. Wunderlich, 70 Ill. 426; Kankakee & Seneca R. R.
Co. v. Horan, 17 Ill. App.

If the entry was made under the clause in the lease giving
a license to the landlord to enter and employ all necessary
force to assume possession, any wrongs subsequently com-
mitted by appellant would not render the entry illegal.
Page v. DePuy, 40 Ill. 513.

Mr. C. W. BROWN, for appellee.

LACEY, J.   The appellee sued the appellants in an action
of trespass and recovered a verdict and judgment for the sum
of $850, seeking to reverse which the appellant brings the
case to this court by appeal.

The cause of action grew out of a certain lease given by
appellant Charlotte Fries, to appellee, and an effort on her
part to collect rent due her from the appellee, and also an
eviction which she accomplished, claiming the right to declare
the lease forfeited for non-payment of rent due her, under a
clause of forfeiture contained in the lease.   The other appel-
lant, Gilmore, became involved in the matter by acting as the

Gilmore v. Fries.

attorney and adviser of appellant Fries, having no other interest.

The declaration counted for two distinct trespasses, one of January 10, 1888, the occasion of which was the levying on the goods of the appellee by appellant Fries by means of a distress warrant for alleged rent due to her for the lease and use of her farm above mentioned and for rent to become due. Another count was for the eviction, taking place February 22, 1888. The verdict was general. On the trial it was made to appear from the evidence that on January 10, 1888, appellant Charlotte Fries levied on the goods of appellee with a distress warrant for rent then due, but within four or five days released the distress to a considerable portion of the property, and returned the property to the appellee, who took it without objection and gave his receipt therefor. This is one of the trespasses complained of. On the 22d of February, 1888, the appellant Fries, by the counsel and assistance of appellant Gilmore, forcibly expelled appellee and his family from the house and premises in pursuance of a declared forfeiture of the lease made by appellant Fries January 26, 1888, and this is the other cause of action declared on in the declaration.

The two are distinct and separate causes. There had been three leases for the farm in question, containing 100 acres of land. By the first two leases the term commenced March 1, 1884, and ended March 1, 1889, for cash rent, but afterward, October 2, 1887, a new written lease was made superseding the old one as far as the last year was concerned. The old lease remained in force until March 1, 1888, and the new lease, separate and independent from the old one, commenced March 1, 1888, and ran till February 28, 1889, and called for two-fifths of the crops, as rent, instead of cash.

It was agreed that under the declaration and pleas, all evidence might be given on trial which would be admissible under any legal and proper declaration, and pleas in this form of action. Under the count for trespass by levying distress warrant and seizing goods which it was claimed was illegal and a trespass, the court gave appellee's instruction No. 1, to this effect, to wit: " That if appellant Fries, on January 10,

1888, seized the goods under distress warrant and held them for a greater or less length of time, and then returned them to plaintiff without having begun any proceedings in court as required by law in cases of distress, then such seizure constituted a trespass for which damages could be recovered. This was manifestly erroneous. The instruction presupposes that the distraint might be lawful in its inception, and so far as we can see it was so; and it then tells the jury that the mere act of returning the property without beginning any proceedings in court under the distress warrant, caused the distraint to become illegal and the grounds of recovery in an action of trespass. The appellee willingly took back the goods distrained, and so far from any wrong being done to him by the return, a benefit might be supposed to be conferred on him. Under the facts it was no trespass. The property, or at least a portion of it, was mortgaged ahead of the claim for rent, for more than it was worth, and it was commendable to return it.

We can not tell how much of the verdict recovered resulted from this instruction, but we are authorized to assume that some, and perhaps much, did, as a large part of the damages, as we suppose from the evidence admitted, was allowed to appellee for loss occasioned to him by reason of the sale of his property under a chattel mortgage held by Peter Bronk, who testified that he would not have foreclosed his mortgage "only for the first levy," and Bronk estimated the loss to appellee at $1,000 for the loss of the use of the farm "this season," "and not realizing what the property ought to have brought had it been wintered through." He estimated the damages to appellee by the sale at $200 to $300.

As it is supposable that this was an element of damages recovered we can see the instruction was damaging. The second instruction was intended to be applicable to the other count of the declaration. It submits the question to the jury to find whether the appellee was not in possession of the farm under lease of 1884 until 1889, which could not be the case, for the lease of 1884 ended March 1, 1888, and then the new lease, which was separate and independent, took effect,

Gilmore v. Fries.

which was not affected by any forfeiture of or expulsion under the old lease. After the expulsion under the old lease, even if it had been forfeited, the appellee could have claimed and recovered possession after the first of March by virtue of the new lease, hence the act of expulsion did not deprive the appellee of the use of the premises under the new lease for the year ending February 28, 1889. If he was deprived of that it must have been caused by some subsequent action of the lessor. This, under the evidence, would require the jury to find for appellee for damages for sowing rye and fixing fence and making ditches and cleaning out ditches and the like, which was done by appellee with the view of enjoying the premises for another year. Then again, the evidence improperly admitted, to the effect that appellee was largely damaged by reason of being kept out of the use of the farm for the year 1889, would induce the jury, under such an instruction, to allow for such damages. If there could be anything recovered for being deprived of the use of the premises for the year 1888 to 1889, it could only be in an action of covenant on the lease. We think the evidence was improper as a measure of damages, so far as damages are supposed to have accrued to appellee on account of the sale of her property under the chattel mortgage.

The distress proceeding may have been the remote cause, but the proximate cause must be held to have been the sale itself, caused by reason of the appellee being too poor to pay it off and prevent sale. The opinion of witnesses as to appellee's damages based on such ground, should not have been allowed.

Equally erroneous was it to allow witnesses to give their opinion of appellee's damages in a lump based on the above ground, and also the damage caused by not being able to rent another farm, on account of the lateness of the season. And besides, what appellee might have made if he had procured another farm or what he might have made by farming the one he was expelled from, would be too remote and speculative. The question would be what the lease was reasonably worth that

he had been deprived of; its value, deducting what he had realized, and the proximate necessary expense he had been compelled to suffer on account of the expulsion, and the direct damages caused by the expulsion, if any, to appellee, or to his goods. There appears to have been no claim for exemplary damages, and indeed there could not be, unless the trespass were wilful or malicious, of which there is no claim. The expulsion was committed under a claim that the lease had been forfeited, which it certainly had been, unless the forfeiture had been waived by distraint for rent falling due after the declared forfeiture, which we need not here decide. The verdict seems to us excessively large and out of all proportion to any actual damages that we can see from the evidence was caused by appellants in the act of the supposed trespass of expulsion, and as to the other there was none. No doubt appellee has suffered loss by being sold out under the chattel mortgage, and by being unable to pay the rent, but these losses can not be charged to appellants.

Therefore the judgment is reversed and the cause remanded.

*Reversed and remanded.*